**UNITED STATES**

v.

**John Thomas TILLMAN.**

**Crim. No. 935–70.**

United States District Court,
District of Columbia.

March 14, 1974.

William L. Fallon, Washington, D. C., for defendant.

Patricia M. Wald, Mental Health Law Project, Benjamin W. Heineman, Jr., Center for Law and Social Policy, Daniel

A. Rezneck, Arnold & Porter, Washington, D. C., amici curiae, appointed by the court.

William Collins, Asst. U. S. Atty., United States District Court, Washington, D. C., for the United States.

## MEMORANDUM OF THE UNITED STATES DISTRICT COURT ON REMAND FROM THE UNITED STATES COURT OF APPEALS

PARKER, District Judge.

In this memorandum the District Court will set forth the proceedings which have been conducted and the findings which have been made on remand of this case from the Court of Appeals. Pursuant to orders of the Court of Appeals of July 16, 1973, and August 10, 1973, an updated study of the defendant was performed in accordance with 18 U.S.C. § 5010(e) for the purpose of obtaining information concerning the defendant's suitability for treatment under the Federal Youth Corrections Act (YCA). After receipt of the updated 5010(e) report, which purported to recommend against a YCA sentence, the Court determined that it would be necessary to conduct further proceedings in order to present to the Court of Appeals a supplemented record which contained a clear and adequate disclosure on the issues relating to the defendant's sentence. As a result of this inquiry the Court has observed that the recommendations of the updated and original 5010(e) reports against sentencing the defendant under the YCA are founded on improper considerations of law and fact and thus do not support the prior judgment of this Court sentencing the defendant as an adult. Futhermore, during the course of these proceedings the Court discovered procedural and substantive problems in the 5010(e) observation and study process at the Lorton Youth Center's diagnostic unit which have been impeding the preparation of "the type of thorough, knowledgeable report which the Court requires to exercise its responsibilities under the [YCA]."[1]

 Accordingly, the District Court submits this supplemented record to the Court of Appeals and suggests that the case be remanded so that this Court may: (1) entertain a motion to resentence the defendant pursuant to Rule 35 of the Federal Rules of Criminal Procedure for correction of an illegal sentence; and (2) establish guidelines and instructions for the Department of Corrections to correct present inadequacies in the 5010(e) evaluation process, as reflected in the record, pursuant to the Court's power under 18 U.S.C. § 5010(e) to designate the quality of the information which it desires from the classification or diagnostic agency.[2]

---

1. United States v. Alsbrook, 336 F.Supp. 973, 975 (D.D.C.1971)

2. The Court cannot presently entertain a motion for correction of sentence pursuant to Rule 35 since an appeal is pending, United States v. Mack, 151 U.S.App.D.C. 162, 466 F.2d 333, 340 (1972) cert. denied, 409 U.S. 952, 93 S.Ct. 297, 34 L.Ed.2d 223 (1972) and the scope of the Court's jurisdiction on remand does not comprehend the authority to resentence the defendant. *See* p. 219 *infra*. Because, however, it has become clear as an incident of the remand proceedings that there is no justification on the record for finding that the defendant would not benefit from rehabilitative treatment under the YCA, the Court believes it is appropriate to indicate this finding to the Court of Appeals, *cf.* Smith v. Pollin, 90 U.S. App.D.C. 178, 194 F.2d 349, 350 (1952), and to suggest remand for the purpose of correcting the illegal sentence. The Court cannot indicate its sentencing preference at this time since there are unanswered questions as to the defendant's capacity to make rehabilitative progress under the YCA which should be addressed. It is anticipated that the issuance of guidelines and instructions to the Department of Corrections will enable the Court to obtain the information which it needs to make a proper sentencing determination.

*Factual Background and Summary of the Proceedings on Remand*

The defendant was convicted of first degree felony murder[3] in November, 1970, when he was not quite 20 years old, and was sentenced to life imprisonment, with the possibility of parole only after the service of 20 years of his sentence.[4] The Court reconsidered the defendant's sentence after the Court of Appeals held that offenders convicted of murder were eligible for Youth Corrections treatment,[5] and committed the defendant to the classification unit at the Lorton Youth Center for a period of observation and study pursuant to 18 U.S.C. § 5010(e) to obtain information as to whether the defendant would derive benefit from treatment under a YCA sentence.

The 5010(e) report which the Court received, dated September 28 and 29, 1973, consisted of a Classification Study prepared by George F. DeFord, Classification and Parole Officer; a Psychological Evaluation prepared by Robert L. Goldstone, Clinical Psychologist; and the Classification Committee's Evaluation and Recommendation signed by Mr. DeFord, Mr. Goldstone, and Joseph E. Cheek, then Associate Superintendent of the Classification Unit.

The Classification Committee recommended against a Youth Act commitment for the defendant:

"The Committee notes that Mr. Tillman has been consistently involved with aggressive acts for the past eight years and he has been going in a step-by-step fashion to progressively worse offenses. He has exhibited no respect for the properties of others. The staff sees Mr. Tillman as a young man needing to be in a structured situation and needing long term incarceration. The Committee does not feel that Mr. Tillman is a candidate for the Youth Center and its program. Therefore, the Classification Committee recommends that Mr. Tillman be sentenced under 4208(a)(2). In addition, it is felt that Mr. Tillman is a little too assaultive for our population."

The Classification Committee, therefore, in reaching its conclusion that the defendant should not be committed to the Youth Center relied heavily on the defendant's involvement in progressively more aggressive offenses for the preceding eight years, his assaultive nature, and his need for a more structured and longer term incarceration than he would receive at the Youth Center.

The Classification Study explained that the defendant had only a modicum of potential for rehabilitation, probably not within the framework of the Youth Center, because he was thought to be dull witted, and a "street sophisticate" and "follower type" who has committed progressively more serious aggressive acts.

The Psychological Evaluation pointed out that the defendant's major need was psychotherapy which, to be effective, would have to extend for a period longer than the time an individual customarily remains at the Youth Center. It concluded that the defendant should not therefore be sentenced under the YCA.

Relying on this 5010(e) report the Court found that the defendant would not benefit from rehabilitative treatment under the YCA, principally for the reason that "the defendant's past and increasing participation in aggressive anti-social behavior" required treatment for a longer period, in a more structured program, and with more extensive psychotherapy, than would be available from a commitment to the Youth Center.[6] The Court reimposed its ear-

---

3. 22 D.C.Code § 2401. The defendant was also convicted of attempted robbery while armed, 22 D.C.Code § 3202, and carrying a dangerous weapon, 22 D.C.Code § 3204.

4. *See* 22 D.C.Code § 2404.

5. United States v. Howard, 146 U.S.App.D.C. 10, 449 F.2d 1086 (1971).

6. Memorandum Opinion filed November 5, 1971.

lier sentence in November, 1971, from which judgment the defendant appealed.

■ On appeal the defendant challenged, *inter alia*, the sentence imposed by the District Court for the reason that the Classification Committee might have placed improper reliance in formulating its recommendation against a YCA commitment on the existence of an illegal sentencing alternative.[7] The defendant suggested that the case be remanded to the District Court so that the Classification Committee could produce a new recommendation based on correct statutory sentencing alternatives, and the Court could resentence the defendant accordingly.

The Court of Appeals held, in an opinion filed June 6, 1973,[8] that the reasons on which the District Court had based its decision to deny the defendant a YCA commitment were in part legally impermissible and in part lacking in sufficient factual support. The case was remanded for reconsideration of sentence, with the comment that the District Judge might order a new 5010(e) evaluation.

The Court initiated the reconsideration of the defendant's sentence by requesting, on July 5, 1973, the preparation of an updated 5010(e) report. The request indicated that additional disclosure would be necessary if the recommendation of the Classification Committee again relied on factors such as overcrowding, lack of local treatment services which meet⁺ the defendant's needs, and the defendant's character traits, such as aggressiveness or assaultiveness, factors which in the original 5010(e) report were of some concern to the Court of Appeals.

The mandate of the Court of Appeals filed on July 16, 1973, remanded the record to the District Court "for the limited purpose of allowing the trial court to entertain a motion of appellant to have appellant transferred to the Youth Center for an updated 5010(e) Report." The mandate did not appear to grant the District Court jurisdiction to reconsider Youth Corrections sentencing, as had been indicated in the opinion of June 6, 1973, and the Court proceeded accordingly.

On August 10, 1973, the Court of Appeals ordered that this case be reheard *en banc* on the basis of the record as supplemented by the District Court in accordance with the order of July 16, 1973, and vacated the opinion and judgment filed on June 6, 1973.

The updated 5010(e) report, received by the Court in late August, 1973, consisted of a Special Progress Report on the defendant's adjustment to the Lorton adult complex prepared by Classification and Parole Officer Pearson Parker; a Psychological Re-Evaluation prepared by Mr. Goldstone; and an August 17, 1973 "Addendum to Classification Study Dated September 29, 1971" signed by a Classification Committee consisting of Mr. Goldstone, Mr. DeFord, and M. H. Stokes, Acting Administrator of the Diagnostic Center. The Addendum addressed what the Committee[9] felt to be the most important considerations relating to the defendant's suitability for a YCA commitment: the defendant's character traits of aggressiveness and assaultiveness, and whether he would benefit from the Youth Center's established program. On the subject of aggressiveness and assaultiveness, the Committee concluded that the defendant's

7. The Classification Committee's Evaluation and Recommendation in the original 5010(e) *report recommended that the defendant* should be given an indeterminate adult sentence pursuant to 18 U.S.C. § 4208(a)(2). The defendant was ineligible for sentencing pursuant to that provision.

8. United States v. Tillman, No. 71–1352 (D. C.Cir. June 6, 1973).

9. Although signed by Stokes, Goldstone and DeFord, the Addendum was apparently written by DeFord. *See* Transcript of Hearing of December 28, 1973 and January 2, 1974 (Tr.) at 12–13, 192–93. Mr. Stokes, as Acting Administrator, replaced Mr. Cheek only for the Addendum.

behavior since his initial 5010(e) commitment had not been indicative of aggressive or assaultive character traits, but rather was conforming and non-hostile.[10] With reference to the defendant's capacity to benefit from the Youth Center program, the Committee's recommendation, although somewhat ambiguous, purported to be against a YCA commitment. The Committee offered these reasons for its recommendation: the defendant's low intelligence level offered negligible hope of benefit from the Youth Center's academic program; the defendant's need for long term psychotherapy would extend beyond the usual stay at the Youth Center; the defendant would not benefit from Youth Center vocational programs because of his limited vocational potential, and would best function in his present vocational capacity at the Lorton adult complex as a forklift operator; and the defendant should not be given a Youth Act sentence because he had made a satisfactory adjustment to the adult complex.

The Addendum also pointed out, however, that the defendant had a dire need for placement in psychotherapy which could be made available at the Youth Center and which could have a significant beneficial impact if the defendant's involvement were long term.[11]

After consideration of the updated 5010(e) report it became apparent that further inquiry into matters presented by the report would be required in order to provide the Court of Appeals with a totally clear and adequate record on remand containing complete disclosure on the issues relevant to the sentencing of the defendant. This inquiry was necessary because particularly with respect to the defendant's ability to benefit from psychotherapy, academic and vocational treatment programs, the Court ascertained ambiguities and inconsistencies in the updated report, discrepancies between the original and updated reports, and the lack of comprehensive factual background data to support and explain the Committee's recommendations. The updated and original reports also raised significant questions as to whether the type of information and analysis which the District Court had been receiving generally in 5010(e) reports was sufficient to enable a judge to make a knowledgeable determination of whether an offender would benefit from a YCA sentence.

Thus the Court initiated an extensive probe into the 5010(e) process in order to insure that the 5010(e) studies of the defendant could be thoroughly evaluated in view of the applicable YCA sentencing criteria, and to bring to light the underlying problems affecting the quality of the studies which the Court had been receiving, as reflected in the studies of the defendant. In furtherance of its inquiry the Court appointed *amici curiae*; sent a questionnaire to the Department of Corrections to elicit information relevant to sentencing of persons under the YCA; requested a clarification of the updated 5010(e) report; conducted a hearing to further illuminate the reasoning behind the Classification Committee's recommendations; and requested the Board of Parole to review the defendant's case. The Court gratefully acknowledges the prodigious assistance provided by the *amici curiae* and the defendant's counsel in these proceedings.

The clarification of the updated 5010(e) report, dated November 30, 1973 and entitled "Supplement to Addendum Dated August 11, 1973,"[12] particularized the reasons for the Classification Committee's[13] recommendation of an adult sentence. These may be summarized as follows:

(1) The defendant has made a satisfactory adjustment to the Lorton adult

---

10. The Special Progress Report made similar findings.

11. The Psychological Re-Evaluation also confirmed the defendant's "major need" for psychotherapy.

12. The actual date of the Addendum is August 17, not August 11.

13. The Supplement was signed by the members of the original Classification Committee, Cheek, DeFord and Goldstone.

complex working as a forklift operator and would have difficulty adjusting to the Youth Center because he is older than the average resident, the residents are not his peers, and he would be emotionally discomforted to experience a lengthy confinement while seeing other residents, committed for shorter terms, come and go;

(2) The defendant's low intelligence level would hamper any significant progress in academic and vocational programs;

(3) The defendant needs long term psychotherapy treatment which he could obtain at the adult complex.

The Board of Parole, after review of the defendant's case, submitted a letter dated January 16, 1974 signed by H. Albion Ferrell, Vice Chairman, reversing the position which it took after review of the original 5010(e) report,[14] and suggesting that "the ends of justice might well be served by substituting a youth act commitment for the originally imposed adult sentence." Mr. Ferrell stated that although the original 5010(e) study indicated that the defendant had a "fairly deeply ingrained pattern of criminal behavior" and no inclination to change his behavior pattern,[15] significant changes had developed during his ensuing three year incarceration. Classification and Parole Officer Pearson Parker informed Mr. Ferrell that the defendant has had no substantial disciplinary problems, that he has performed very well in his work assignments at the print shop and industries warehouse, and that he is enrolled in the academic school and is doing quite well.[16]

The answers to the November 1973 questionnaire to the Department of Corrections contain information of a general nature on the 5010(e) observation and study process at the Lorton Youth Center, such as the standards and factors involved in making a 5010(e) recommendation, and statistics on the treatment programs, facilities, staff, inmate population, and so on. Also a substantial quantum of testimony was developed at the hearing on December 28, 1973 and January 2, 1974 relating to the 5010(e) studies of the defendant and to diagnostic unit procedures at the Lorton Youth Center and Federal Youth Centers. The Court called as witnesses three members of the Classification Committee: Mr. Cheek, Mr. DeFord and Mr. Goldstone; the Administrator of Lorton Youth Center I, Robert C. Whitaker; and the Administrator of Case Management for the Federal Bureau of Prisons, James D. Williams. Information from these sources will be cited where it is relevant to the discussion in subsequent portions of this memorandum.

### Adequacy of the Reasons Contained in the 5010(e) Reports As a Basis for Denying a YCA Sentence

The detailed inquiry which has been conducted, as summarized in the preceding section, served to clarify and flesh out the findings and reasoning of the Lorton Youth Center diagnostic personnel who participated in the 5010(e) evaluation of the defendant. For this reason these proceedings are considered to have been within the intended scope of the Court's jurisdiction on remand. A question remains, however, as to the extent to which the Court may delve into an analysis of the factual record which it has developed, particularly when that

---

14. The letter of the Board of Parole dated October 8, 1971 and also signed by Mr. Ferrell, indicated concurrence with the original 5010(e) recommendation against YCA sentencing because the defendant's behavior pointed to serious psychological problems requiring "extended therapy, not possible at the Youth Center."

15. The Board of Parole's October 8, 1971 letter made no reference to the defendant's ingrained pattern of criminal behavior or his lack of inclination to change his behavior. The original 5010(e) report did not comment on the defendant's attitude toward rehabilitation or the degree to which his pattern of criminal behavior was ingrained.

16. It is not known whether Mr. Ferrell relied simply on Mr. Parker's July 25, 1973 Special Progress Report, or obtained other information from Mr. Parker.

may involve comment on issues which are before the Court of Appeals.

■ The record as supplemented by the Court plainly reveals that the defendant's adult sentence is invalid because it was based on reasons which were and are not factually and legally inadequate to sustain a finding that the defendant would not benefit from treatment under the YCA. At the very least the record demonstrates that under the present circumstances it would be in the interests of justice to reconsider the defendant's eligibility for YCA sentencing. Because the Court considers that it has a duty to facilitate the correction of an illegal sentence whenever such may appear, it sets forth the following findings in support of its suggestion of remand of the case for reconsideration of sentence, or alternatively, for the use of the Court of Appeals in connection with the rehearing of this case en banc.[17]

When the reasons and conclusions in the several 5010(e) reports in support of the Classification Committee's recommendation against YCA treatment are distilled to their essence, four primary considerations emerge.[18] These are that the defendant needs psychotherapy treatment for a longer term than is available at the Lorton Youth Centers but which would be available at the adult complex; that the defendant has little potential to benefit from educational and vocational programs at the Youth Center; that the defendant has made a satisfactory emotional adjustment to the adult complex and transfer to the Youth Center would negatively affect his emotional stability; and that the defendant's prior record of aggressive behavior makes him unsuitable for treatment at the Youth Center. These will be dealt with seriatim.

1. Need for Long Term Psychotherapy Treatment.

A consistent theme of the 5010(e) reports has been the defendant's need for psychotherapy treatment extending over a long term, i. e., approximately one to five years.[19] The key figure in this regard is Mr. Goldstone, the clinical psychologist who prepared the psychological evaluations of the defendant. In the Psychological Re-Evaluation of the updated 5010(e) study, Mr. Goldstone commented that the defendant had been able to gain some insight into his problems and had become more realistic about himself and his future (despite the apparent absence of any psychotherapy treatment at the adult complex).[20] It was felt that the defendant's major need was psychotherapy, through which he could be helped to achieve a better understanding of himself and how to deal with his emotional problems. Mr. Goldstone made it clear at the hearing that his recommendation against a YCA sentence was not based on a determination that the defendant would not benefit from YCA treatment. Instead, his decision was founded on the belief that the defendant would not benefit very much from participation in the group therapy program at the Lorton Youth Center because he needs long term treatment and probably would not remain at the Youth Center long enough for the treatment to be effective.[21] The average length of incarceration at the Lorton Youth Cen-

---

17. See note 2, supra.

18. There are other factors which may have influenced the Committee's recommendation, including reliance on 18 U.S.C. § 4208 as an alternative available sentencing provision, overcrowding at the Youth Center, and the belief that the defendant has limited capacity to change his behavior or character traits because he has the personality of an adult. The Court rejects these reasons as a basis for making a "no benefit" finding. For a discus-

sion of these and other factors see Post Hearing Memorandum of Amici Curiae, filed February 4, 1974 at 5–37.

19. Tr. at 184, 191.

20. The August 17, 1973 Addendum points out that after interviewing the defendant it was discerned that he was not involved in psychotherapy at the adult complex. See also tr. at 118–19.

21. Tr. at 184–85.

ter for defendants committed under 18 U.S.C. § 5010(c) is 19 months.[22]

The hesitancy of Mr. Goldstone and the Classification Committee [23] to recommend a YCA sentence for offenders who require treatment for periods longer than the average inmate stay is borne out by the response of Charles M. Rogers, Assistant Director for Operations of the Department of Corrections, to question 2(c) of the November 1973 questionnaire:

"Q. 2.(c) To what extent is the judgment whether a defendant will benefit from treatment under the Youth Act made on the basis of the length of time required for treatment of the individual?

A. If in the judgment of the diagnostic staff a defendant would require long term treatment within an institutional setting, involving several years, serious consideration would be given to a recommendation other than the Youth Act. If it is felt that a shorter term is needed in an institutional setting with long term parole supervision, a Youth Act recommendation is considered if otherwise the defendant seems amenable to treatment."

This philosophy is also shared by Mr. Whitaker, Administrator of Lorton Youth Center I:

"Q. Do you regard a person who requires long-term incarceration or long-term treatment as unsuitable for treatment under the Youth Corrections Act?

A. Yes sir." [24]

Mr. Whitaker regards treatment to be long term if it is in excess of two years.[25]

The picture which emerges is that the Lorton Youth Center, because of its limited capacity, has been oriented to provide only short term treatment (i. e., less than two years) and offenders who require treatment for longer periods are likely to be rejected for that reason. In the defendant's case, he was rejected not because he would not benefit from YCA treatment, but because he needed more treatment than the Lorton Youth Center staff felt it could provide.

The Federal Youth Corrections Act, 18 U.S.C. § 5010(c), expressly provides for long term treatment for youth offenders. Congress added what is now section 5010(c) to the YCA "so that those youths who might not have qualified for treatment under section 5010(b) because of the inadequacy of the six year limitation, could be sentenced under the Act." [26] Therefore, the conclusion of Mr. Goldstone and the Classification Committee that the defendant could make rehabilitative progress from involvement in long term psychotherapy would appear to support a finding that the defendant would benefit from YCA treatment. Certainly a recommendation against a YCA commitment because of the lack of long term psychotherapy treatment facilities is improper. The District Court has already held that "[t]here is no legal authority for diverting otherwise eligible youths to adult institutions due solely to lack of space." [27] Similarly, there is no legal authority to deny an eligible offender a Youth Act sentence because of the inability of the correctional institutions to provide treatment contemplated by the Act. If the Lorton Youth Centers cannot, as a practical matter, accommodate offenders with long term treatment needs, there appears to be no legal obstacle to prevent cooperation in this regard between Lorton and the Federal

---

22. November 1973 Questionnaire, response to question 5(b).

23. Mr. DeFord confirmed that he thought the need for long term treatment would be a disqualifying factor for YCA sentencing. Tr. at 80–82, 89. Mr. Cheek testified to the same effect. Tr. at 374, 377, 385–86.

24. Tr. at 490.

25. Tr. at 491.

26. United States v. Coefield, 155 U.S.App.D. C. 205, 476 F.2d 1152, 1160 (1973) (appendix).

27. United States v. Alsbrook, *supra* note 1, 336 F.Supp. at 976.

Bureau of Prisons, which does have long term treatment programs.[28]

Thus reliance by the Court on the defendant's need for long term psychotherapy treatment in denying the defendant a YCA sentence was improper.

2. Inability to Achieve Academic or Vocational Gains.

Although not cited in the original 5010(e) report, the subsequent 5010(e) recommendations against YCA sentencing relied on the defendant's lack of potential to benefit from academic or vocational programs at the Youth Center because of his low intelligence.

■ At the outset it should be stated that the defendant's inability to achieve educational or vocational gains does not necessarily mean that he would not benefit from YCA treatment. Such programs may be unnecessary where the causes of an offender's antisocial tendencies are correctable primarily through psychological, psychiatric or other treatment. The 5010(e) reports did not address the question of whether or to what extent the defendant needed academic and vocational treatment. Instead they simply concluded that he would not fit into the established programs at the Youth Center, regardless of whether those programs provided the spectrum of treatment services contemplated by the YCA or needed by the defendant. Although the defendant's capacity to make academic or vocational gains may very well be related to whether he could make rehabilitative progress from treatment under the YCA, the 5010(e) reports neither commented on this question nor provided the Court with sufficient information upon which to make a determination.

Addressing solely the question of whether the defendant's low intelligence level would "hamper his making any significant progress in a school and/or vocational program" at the Youth Center, the evidence on the record does not support the Classification Committee's position and some of it tends to show that the defendant would make academic, vocational and rehabilitative progress from participating in the programs. The defendant had been characterized to be in the "bottom of the dull range of intelligence"[29] and was assessed to have limited vocational potential for the Youth Center programs.[30] However, the 5010(e) reports did not explain why a person of the defendant's intelligence level could not make progress in the Center's basic reading and mathematics programs. In fact the defendant's reading level is not very different from those of many of the Center's inmates,[31] and he was credited with a grade of "A" for a math class report dated June 29, 1973, at the adult complex.[32] The defendant's reading level presently qualifies him for some of the vocational programs at the Youth Center, and it is the policy of the Center to offer part or full time reading and training programs to persons whose reading is deficient until they are able to meet the entry qualifications.[33] The defendant adjusted quite well to his work assignments at the industries warehouse and print shop at the adult complex[34] and there is no reason to suppose that he would not make further rehabilitative progress through the academic and vocational programs at the Youth Center.

■ Thus the defendant does appear to have some rehabilitative potential in the academic and vocational areas, and whatever this potential is, it has not been shown why it would adversely affect the defendant's ability to benefit from rehabilitative treatment under the YCA.

28. Testimony of James D. Williams, tr. at 526, 528–29.

29. August 17, 1973 Addendum.

30. *Id.*; November 30, 1973 Supplement.

31. *See* tr. at 332–36; November 1973 Questionnaire, Appendix E.

32. Special Progress Report dated July 25, 1973.

33. November 1973 Questionnaire, Appendix E.

34. Special Progress Report dated July 25, 1973.

3. Satisfactory Adjustment to the Adult Complex and Detriment to Emotional Stability Resulting From Transfer to the Youth Center.

The Classification Committee recommended that the defendant should remain at the adult complex because he has made a satisfactory adjustment and might be adversely affected by a transfer to the Youth Center since he would not be among his peers and his relatively long term confinement witnessing other inmates come and go could be emotionally discomforting.

 As a legal justification for denying an eligible offender a YCA sentence this reasoning is dubious. Only if the Court finds that the defendant would not derive benefit from rehabilitative treatment under the YCA can it sentence him as an adult.[35] Satisfactory adjustment to an adult institution is logically irrelevant to this question.[36] Severe emotional maladjustment to a YCA commitment might be cause to find that an offender would not benefit from treatment under the Act, but such a judgment could be made only after a careful and realistic analysis of the offender's treatment needs and the degree to which they could be met by available YCA treatment alternatives,[37] and would have to stand up against the statutory presumption in favor of YCA sentencing.[38] This is not the kind of analysis which the 5010(e) reports have provided. The Classification Committee's conclusion that the defendant might have difficulty adjusting to the Youth Center is not a judgment that the defendant would not benefit from a YCA sentence, but rather that the failure of the Lorton Youth Center to segregate offenders according to their treatment needs, as the Center is required to do by the Act,[39] might be detrimental to the defendant. Any difficulty which the defendant might experience in adjusting to the Youth Center would be due, not to his lack of rehabilitative potential, but to the lack of facilities for long term treatment for offenders 22 years of age or older. Should it be determined that it is impractical or unfeasible to establish such a program at Lorton, the Court may inquire into the availability of an appropriate program at other youth centers.

 Additionally, the Classification Committee has provided no underlying factual data to support its conclusions. Although it is possible that transfer to the Youth Center might adversely affect the defendant's emotional stability, it seems just as plausible that continued confinement at the adult complex would unnecessarily expose the defendant to more hardened criminal types, in violation of the intent of the Act, and would negatively affect his emotional stability because of the knowledge that no matter how well he performs he must remain confined for 20 years. Not only did the Classification Committee fail to address these questions, but they did not consult with the defendant to determine directly what his feelings would be about transfer.[40] The present state of the record in this area, therefore, would not support a judgment sentencing the defendant as an adult.

4. Prior Record of Aggressive Behavior.

 In the original 5010(e) study the Classification Committee, after examining the defendant's prior criminal

---

35. United States v. Waters, 141 U.S.App.D. C. 289, 437 F.2d 722, 724, 727 (1970).

36. United States v. Matthews, 480 F.2d 1191, 1192–1193 (D.C.Cir.1973).

37. 18 U.S.C. § 5011 provides for treatment of committed youth offenders in various types of institutions which offer the essential varieties of treatment and, insofar as practical, segregate classes of offenders according to their needs for treatment. Treatment of offenders in appropriate outside facilities may be contracted for under § 5013.

38. See United States v. Waters, note 35 supra.

39. See note 37 supra.

40. Tr. at 403.

record, concluded that the defendant's increasing involvement in aggressive antisocial acts rendered him too assaultive to be placed in the Youth Center, which could not provide a sufficiently structured environment for him.[41] Since the YCA expressly provides for maximum security treatment facilities and segregation of offenders according to their needs for treatment, the Committee's recommendation again seems to have been premised on the Youth Center's lack of required treatment facilities rather than on the defendant's capacity to benefit from treatment. Although it would have been permissible and desirable for the Committee to have attempted to relate the defendant's prior behavior to the existence of character traits relevant to rehabilitative potential, such as incorrigibility or attitude towards rehabilitation, it did not do this, and the Court took the analysis no further. The entire argument was abandoned in the updated 5010(e) studies of August 17, 1973 and November 30, 1973 which reported that the defendant had adjusted well, was neither hostile, aggressive nor assaultive, and presented no behavior problem.[42] It was thought, however, that the root causes of the defendant's prior criminal acts had not been adequately treated. Thus the record reflects that the original finding that the defendant would not benefit from a YCA commitment because of his prior record of aggressive behavior was legally and, in hindsight, factually erroneous. The defendant's manifestations of criminal

behavior appear to be controllable and very possibly remediable through proper rehabilitative treatment.

### Conclusion

The principal reasons cited in the original 5010(e) report and relied upon by the Court for sentencing the defendant as an adult, and the reasons subsequently established in the August 17, 1973 Addendum and November 30, 1973 Supplement, are insufficient to support a finding that the defendant would not benefit from rehabilitative treatment under the YCA. Accordingly, it is suggested that this case be remanded to permit the Court to vacate the prior illegal sentence which it entered and to reconsider the eligibility of the defendant for a YCA sentence. On remand the Court contemplates the issuance of guidelines and instructions to the Lorton Youth Center classification or diagnostic unit to insure that future 5010(e) reports will contain information which is legally and factually relevant to the question of whether an offender would derive benefit from rehabilitative treatment under the YCA.

The need for guidelines of this type has been made clear. The several 5010(e) reports, the testimony of the members of the Classification Committee and correctional officials, and the responses to the Court's questionnaire, demonstrate that the 5010(e) study and observation process at the Lorton Youth Center is marred by a lack of understanding of the kind of information

---

41. The Classification Committee's finding of aggressiveness and assaultiveness requiring a more structured environment is in some respects inconsistent with other portions of the 5010(e) study. For example, the Committee noted that the defendant is primarily a passive individual who exhibits aggressive behavior after exposure to intoxicants; the Psychological Evaluation pointed out that the defendant is easily influenced by his peers and shapes his behavior in order to gain acceptance from them; and the Classification Study spoke of the defendant as comparatively cooperative, as having made a very satisfactory adjustment to the Youth Center, and as having presented no behavior

problem. These observations depict an individual who is generally nonaggressive and whose susceptibility to commit occasional aggressive acts can be controlled. This is the analysis which was ultimately recognized in the updated 5010(e) report and the letter of the Board of Parole of January 16, 1974. *See* note 42 *infra* and accompanying text.

42. The subject of the defendant's behavioral complexion is discussed in the July 25, 1973 Special Progress Report, the August 17, 1973 Addendum, the Psychological Re-Evaluation, and also in the January 16, 1973 letter from the Board of Parole.

which the courts need to make informed and proper YCA sentencing judgments. Some of the inadequacies in the process may be apparent from the discussion above, and a more complete catalogue has been compiled by the *amici curiae*.[43] As a result of these deficiencies many eligible youth offenders such as the defendant may have been improperly denied YCA treatment and the possibility of rehabilitation, to the benefit of neither themselves nor society.[44] Closer communication and cooperation between the courts and correctional personnel in these areas is necessary to ensure that YCA sentencing decisions conform to the congressional design.

---

43. *See* Post-Hearing Memorandum of *Amici Curiae*, filed February 4, 1974 at 39–86.

44. On April 1, 1974 the Court of Appeals, *en banc*, entered an order granting the request that this case be remanded to the District Court for purposes of entertaining a motion to resentence the defendant under Rule 35 F.R.Cr.Proc., for correction of an illegal sentence and for such other action as required under the circumstances in the case.