## DORSZYNSKI *v.* UNITED STATES

No. 73–5284.  Argued March 20, 1974—Decided June 26, 1974

*Robert H. Friebert,* by appointment of the Court, 414 U. S. 1142, argued the cause and filed a brief for petitioner.

*Gerald P. Norton* argued the cause for the United States. With him on the brief were *Solicitor General Bork, Assistant Attorney General Petersen, Deputy Solicitor General Frey, Jerome M. Feit,* and *Joseph S. Davies, Jr.**

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted certiorari, 414 U. S. 1091 (1973), to resolve a conflict in the Circuits concerning whether, in sentencing a youth offender under other applicable penal statutes, § 5010 (d) of the Federal Youth Corrections Act, 18 U. S. C. § 5005 *et seq.,* requires a federal district court first to make an explicit finding, supported by reasons on the record, that the offender would not benefit from treatment under subsection (b) or (c) of § 5010. The Court of Appeals held that such a finding may be implied from the record, 484 F. 2d 849 (CA7 1973). Three Circuits have taken that position,[1] and three Circuits have required an explicit finding accompanied by supporting reasons.[2] We conclude that while an express finding of no benefit must be made on the

---

*Patricia M. Wald, Daniel A. Rezneck, James F. Flug, Robert Plotkin,* and *Alvin J. Bronstein* filed briefs for the National Legal Aid and Defender Assn. et al. as *amici curiae* urging reversal.

[1] *Williams* v. *United States,* 476 F. 2d 970 (CA3 1973); *Cox* v. *United States,* 473 F. 2d 334 (CA4 1973) (en banc); *United States* v. *Jarratt,* 471 F. 2d 226 (CA9 1972), cert. denied, 411 U. S. 969 (1973); cf. *United States* v. *Walker,* 469 F. 2d 1377 (CA1 1972).

[2] *Brooks* v. *United States,* 497 F. 2d 1059 (CA6 1974); *United States* v. *Kaylor,* 491 F. 2d 1133 (CA2 1974) (en banc); *United States* v. *Coefield,* 155 U. S. App. D. C. 205, 476 F. 2d 1152 (1973) (en banc); cf. *United States* v. *Schenker,* 486 F. 2d 318 (CA5 1973); see also *Small* v. *United States,* 304 A. 2d 641 (DC Ct. App. 1973).

record, the Act does not require that it be accompanied by supporting reasons. The judgment of the Court of Appeals is therefore reversed, and the case is remanded to the District Court for further proceedings.

## I

On October 19, 1971, a special agent of the Federal Bureau of Narcotics and Dangerous Drugs made arrangements with petitioner's codefendant, whose case is not before this Court, to purchase approximately 1,000 tablets of lysergic acid diethylamide (LSD) the following day. At the appointed hour on October 20, 1971, the undercover agent was shown approximately 1,000 LSD tablets in the possession of petitioner's codefendant, who transferred the tablets to the agent. The exhibition and transfer took place in an automobile being driven by petitioner. After the tablets were transferred to the agent but before money had changed hands, petitioner and his codefendant were arrested. The complaint upon which the arrest warrant for petitioner issued charged him with knowingly and intentionally possessing approximately 1,000 tablets of LSD, in violation of 18 U. S. C. § 2 and 21 U. S. C. § 844 (a).[3] Subsequent to petitioner's release on his own recognizance, his counsel informed the District Court that petitioner intended to plead guilty to the charge, and requested the completion of a presentence report prior to the plea, as authorized by Fed. Rule Crim. Proc. 32 (c).

On February 14, 1972, proceedings were had in the District Court upon the filing of an information, ar-

---

[3] Title 18 U. S. C. § 2 made petitioner punishable as a principal for any offense against the United States committed by his codefendant. Title 21 U. S. C. § 844 (a) makes punishable the knowing or intentional possession of a controlled substance such as LSD when not obtained pursuant to a valid prescription or order, or as otherwise authorized by law.

raignment, plea, and sentence. The Government filed a one-count information charging petitioner and his co-defendant with a misdemeanor offense under 18 U. S. C. § 2 and 21 U. S. C. § 844 (a). The Government informed the court that the maximum sentence petitioner and his codefendant, who were first offenders under § 844 (a), could receive was one year in prison, a fine of $5,000, or both; the court was also advised that since petitioner might have been under the age of 26, see n. 9, *infra*, he "may also be subject to the Federal Youth Corrections Act."[4] App. 6. Petitioner, who was 19

---

[4] The sentencing provisions of the Act, 18 U. S. C. § 5010, are as follows:

"(a) If the court is of the opinion that the youth offender does not need commitment, it may suspend the imposition or execution of sentence and place the youth offender on probation.

"(b) If the court shall find that a convicted person is a youth offender, and the offense is punishable by imprisonment under applicable provisions of law other than this subsection, the court may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter until discharged by the Division as provided in section 5017 (c) of this chapter; or

"(c) If the court shall find that the youth offender may not be able to derive maximum benefit from treatment by the Division prior to the expiration of six years from the date of conviction it may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter for any further period that may be authorized by law for the offense or offenses of which he stands convicted or until discharged by the Division as provided in section 5017 (d) of this chapter.

"(d) If the court shall find that the youth offender will not derive benefit from treatment under subsection (b) or (c), then the court may sentence the youth offender under any other applicable penalty provision.

"(e) If the Court desires additional information as to whether a youth offender will derive benefit from treatment under subsection

years old at the time of the proceeding and had had no prior criminal record, pleaded guilty, as did his codefendant. After inquiry as prescribed by Fed. Rule Crim. Proc. 11 to determine whether there was a basis in fact for petitioner's guilty plea, and whether it was entered voluntarily with understanding of its nature and consequences,[5] the District Court accepted the plea.

(b) or (c) it may order that he be committed to the custody of the Attorney General for observation and study at an appropriate classification center or agency. Within sixty days from the date of the order, or such additional period as the court may grant, the Division shall report to the court its findings."

The release of youth offenders committed under § 5010 is governed by 18 U. S. C. § 5017, which provides in part:

"(a) The Division may at any time after reasonable notice to the Director release conditionally under supervision a committed youth offender. When, in the judgment of the Director, a committed youth offender should be released conditionally under supervision he shall so report and recommend to the Division.

"(b) The Division may discharge a committed youth offender unconditionally at the expiration of one year from the date of conditional release.

"(c) A youth offender committed under section 5010 (b) of this chapter shall be released conditionally under supervision on or before the expiration of four years from the date of his conviction and shall be discharged unconditionally on or before six years from the date of his conviction.

"(d) A youth offender committed under section 5010 (c) of this chapter shall be released conditionally under supervision not later than two years before the expiration of the term imposed by the court. He may be discharged unconditionally at the expiration of not less than one year from the date of his conditional release. He shall be discharged unconditionally on or before the expiration of the maximum sentence imposed, computed uninterruptedly from the date of conviction."

[5] Although petitioner's complaint here is that he was *not* sentenced under the Act, following his conviction he challenged the validity of his plea in part on the ground that he was not informed that under

Since petitioner desired to be sentenced at this proceeding, the District Court recessed to consider the presentence report, which petitioner's counsel had already read. After recess and before sentencing, petitioner was given his right to allocution, and petitioner's counsel requested the court that petitioner "be placed . . . on probation under the Youth Corrections Act." App. 13. See n. 4, *supra.* Petitioner then received a split sentence which remitted him to the custody of the Attorney General for one year, to serve 90 days' confinement "in a jail-type or treatment" institution, although the judgment mentions only a "jail-type" institution; the execution of the remainder of the sentence was suspended and petitioner was placed on probation for two years upon release from custody. 18 U. S. C. § 3651.[6] At no time during the proceeding, including

the Act he could have received a sentence of incarceration and supervision up to a period of six years, 18 U. S. C. §§ 5010 (b) and 5017 (c), see n. 4, *supra,* in asserted violation of Rule 11. The District Court denied relief on this ground; that ruling has not been challenged.

[6] There is no contention made that the District Court could not place petitioner on probation under 18 U. S. C. § 3651, as opposed to probation under the Act, 18 U. S. C. § 5010 (a). See *United States* v. *Kurzyna,* 485 F. 2d 517 (CA2 1973). Petitioner was released from confinement to probation on May 11, 1972, with the special condition that his probation terminate May 11, 1974. Although by now petitioner may have fully served his sentence, including probation, he still suffers the disabilities accompanying a criminal misdemeanor conviction under 21 U. S. C. § 844 (a). While the provision under which he was sentenced to probation, 18 U. S. C. § 3651, does not provide for relief from these disabilities, the Act does so in 18 U. S. C. § 5021, by its provision for setting aside the conviction of a youth offender:

"(a) Upon the unconditional discharge by the division of a committed youth offender before the expiration of the maximum sentence imposed upon him, the conviction shall be automatically set aside and

sentencing, did the District Court make any reference to the Federal Youth Corrections Act.

On May 1, 1972, after having filed numerous other post-conviction motions for relief, petitioner filed the motion at issue here, seeking relief pursuant to Fed. Rules Crim. Proc. 32 (d) and 35, and 28 U. S. C. § 2255, on two grounds. The first alleged that his guilty plea was not made understandingly; that issue is not before us. See n. 5, *supra.* The second alleged that the District Court was without jurisdiction to impose the sentence given because the court failed to make a finding that petitioner would not derive benefit from treatment under § 5010 (b) or (c), as assertedly required by § 5010 (d). See n. 4, *supra.* The District Court held an evidentiary hearing to consider this motion, as well as other motions pending at that time. All were denied without opinion. The District Court stated at the post-

the division shall issue to the youth offender a certificate to that effect.

"(b) Where a youth offender has been placed on probation by the court, the court may thereafter, in its discretion, unconditionally discharge such youth offender from probation prior to the expiration of the maximum period of probation theretofore fixed by the court, which discharge shall automatically set aside the conviction, and the court shall issue to the youth offender a certificate to that effect."

Despite the expiration of petitioner's sentence, then, he may still receive the benefit of 18 U. S. C. § 5021 if he is resentenced under the Act. To be eligible to have his conviction set aside under the Act, petitioner would have to be committed under § 5010 (b) or (c), or placed on probation under § 5010 (a), and achieve the early discharge required by § 5021 (a) or (b). While this might require the imposition of a longer sentence than he originally received, petitioner represents through counsel that he would voluntarily seek resentencing which would place him back on probation. Tr. of Oral Arg. 8, 16–18. The District Court would then be able, as a matter of discretion, to provide the requisite early unconditional discharge. 18 U. S. C. § 5021 (b).

conviction hearing that the Act did not require an affirmative finding that petitioner would not benefit from treatment thereunder before the court could sentence him under other applicable penalty provisions; the court concluded that in committing petitioner for one year under a split sentence "the [District] Court impliedly [held] the Youth Corrections Act not applicable." App. 45.

The Court of Appeals affirmed, rejecting the view that trial judges must make an explicit finding that youth offenders would not benefit from treatment under the Act. The Court of Appeals held that such a determination may be implied from the record as a whole and that the imposition of the split sentence upon petitioner after his counsel had raised the possibility of sentencing under that Act satisfied § 5010 (d). 484 F. 2d, at 851.

## II

### *The Federal Youth Corrections Act*

The sole issue in this case is the validity of the sentence imposed by the District Court. Petitioner contends that before any adult sentence may be imposed § 5010 (d) requires, first, that the sentencing judge find explicitly that the convicted defendant would receive no benefit from treatment under the Act and, second, that the sentencing judge must explain the reasons for his finding. We begin with the general proposition that once it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end.[7] *Gore* v. *United States,* 357

---

[7] There is no contention here that the District Court relied upon improper or inaccurate information. *United States* v. *Tucker,* 404 U. S. 443 (1972). Petitioner contends he was denied due process because he was deprived of his claimed right to be sentenced under the Act, without a reasoned explanation on the record for the asserted deprivation. We need not address this contention, for it was not raised before the District Court, the Court of Appeals, or in the

U. S. 386, 393 (1958); *Townsend* v. *Burke,* 334 U. S. 736, 741 (1948); *Blockburger* v. *United States,* 284 U. S. 299, 305 (1932). Our task, therefore, is to determine whether the sentence imposed here was permitted under § 5010 (d) of the Act.

The Federal Youth Corrections Act has been accurately described as the most comprehensive federal statute concerned with sentencing. *United States* v. *Coefield,* 155 U. S. App. D. C. 205, 209, 476 F. 2d 1152, 1156 (1973). The Act is in substantial part an outgrowth of recommendations made by the Judicial Conference of the United States more than 30 years ago.[8] The principles and procedures contained in the Conference recommendations were in turn largely based on those developed since 1894 for a system of treatment of young offenders in England, known as the Borstal system. See Criminal Justice Act of 1948, 11 & 12 Geo. 6, c. 58, and Criminal Justice Act of 1961, 9 & 10 Eliz. 2, c. 39. Statistics available at the time of the Conference study revealed the two principal motivating factors behind the enactment of the Act: first, the period of life between 16 and 22 years of age was

questions presented in the petition for certiorari. *Phillips Co.* v. *Dumas School Dist.,* 361 U. S. 376, 386 n. 12 (1960); *Irvine* v. *California,* 347 U. S. 128, 129–130 (1954); *Radio Officers' Union* v. *NLRB,* 347 U. S. 17, 37 n. 35 (1954).

[8] In 1941 Mr. Chief Justice Stone requested the Judicial Conference to study the general subject of punishment for crime. The Chief Justice appointed four federal courts of appeals judges and three district judges to the committee which undertook the study. A subcommittee gave particular attention to the treatment of youth offenders. The committee made a report to the Judicial Conference in 1942, and developed a draft of an act to provide a correctional system for adult and youth offenders. The report as adopted by the Conference was first presented to Congress in 1943. The recommendations regarding youth offenders were largely adopted by Congress in 1949 in the bill which became the Federal Youth Corrections Act in 1950.

found to be the time when special factors operated to produce habitual criminals. Second, then-existing methods of treating criminally inclined youths were found inadequate in avoiding recidivism. H. R. Rep. No. 2979, 81st Cong., 2d Sess., 2–3 (1950) (hereinafter H. R. Rep. No. 2979). The Act was thus designed to provide a better method for treating young offenders convicted in federal courts in that vulnerable age bracket, to rehabilitate them and restore normal behavior patterns. *Ibid.*

To accomplish this objective, federal district judges were given two new alternatives to add to the array of sentencing options previously available to them, see n. 9, *infra:* first, they were enabled to commit an eligible offender to the custody of the Attorney General for treatment under the Act. 18 U. S. C. §§ 5010 (b) and (c). Second, if they believed an offender did not need commitment, they were authorized to place him on probation under the Act. 18 U. S. C. § 5010 (a). If the sentencing court chose the first alternative, the youth offender would be committed to the program of treatment created by the Act.

The objective of these options represented a departure from traditional sentencing, and focused primarily on correction and rehabilitation. All persons under 22 years of age at the time of conviction were made eligible for probation or treatment under the Act,[9] the latter de-

---

[9] The Act is ordinarily not applied to convicted persons under the age of 18, who are eligible for sentencing under the provisions of the Federal Juvenile Delinquency Act, 18 U. S. C. § 5031 *et seq.* And certain multiple offenders in the District of Columbia are, despite their qualifying age, barred from sentencing under the Act. D. C. Code Ann. § 22–3202 (d) (1). By contrast, convicted persons between the ages of 22 and 26, termed "young adult" offenders, may be sentenced for treatment under the Act if "the court finds that there is reasonable groun[d] to believe that the defendant will benefit from" treatment under the Act. 18 U. S. C. § 4209. Of

fined as "corrective and preventive guidance and train-ing designed to protect the public by correcting [their] antisocial tendencies." 18 U. S. C. §§ 5006 (e) and (g). To implement the program of treatment for youth of-fenders committed under the Act, a Youth Correction Division was created under the Board of Parole which, in conjunction with the Bureau of Prisons and the Proba-tion Service, operates to provide the unique features of the Act's program. 18 U. S. C. § 5005.

An important element of the program was that once a person was committed for treatment under the Act, the execution of sentence was to fit the person, not the crime for which he was convicted. Classification agencies were to be established by the Director of the Bureau of Prisons to receive and study the person committed and make rec-ommendations to the Director as to appropriate treat-ment. 18 U. S. C. §§ 5014, 5015. Further, the range of treatment available was made broad to provide maximum flexibility. The Director was authorized both to adapt numerous public facilities, and to contract with public or private agencies, in order to provide institutional treat-ment which the Director could vary according to the com-mitted person's progress or lack of it. 18 U. S. C. §§ 5011, 5015. An integral part of the treatment program was the segregation of the committed persons, insofar as prac-ticable, so as to place them with those similarly commit-ted, to avoid the influence of association with the more hardened inmates serving traditional criminal sentences. 18 U. S. C. § 5011.

In addition to institutional treatment, the Division was empowered to order conditional release under supervision at any time of those committed under the Act, with fed-

course, adult offenders are eligible for sentencing only under statutory provisions different from those available for juveniles, youth of-fenders, and young adult offenders.

eral probation officers providing the supervision.[10]  18 U. S. C. §§ 5007, 5017, 5019. Conditional release was mandatory after a period of time fixed by the statutory formula. 18 U. S. C. § 5017. See n. 4, *supra*. The Division was further authorized to order the unconditional discharge of committed persons after a fixed period of treatment, and was required unconditionally to discharge them within a period also fixed by statutory formula. 18 U. S. C. § 5017. A powerful tool available to the Division was its discretion to discharge committed persons unconditionally before it was required to do so, for upon such discharge the conviction upon which the sentence rested would be automatically set aside. 18 U. S. C. § 5021 (a). See n. 5, *supra*. Similarly, if the sentencing judge chose the second alternative created by the Act, *i. e.*, placement of the youth offender on probation under its provisions, the judge himself could exercise his discretion to discharge the offender from probation unconditionally. 18 U. S. C. § 5021 (b). See n. 6, *supra*. This, too, would result in the automatic setting aside of the offender's conviction. 18 U. S. C. § 5021 (b).

The foregoing describes the new options of treatment and probation made available to the federal sentencing court under the Act.[11] Our concern is not with the op-

---

[10] In 1952, Congress amended § 5024 of the Act, and added §§ 5025 and 5026, in order to extend the Act's coverage to youth offenders convicted in the District of Columbia. 66 Stat. 45. In 1967, Congress further amended these sections, withdrawing from the Bureau of Prisons and the Youth Correction Division control of District of Columbia youth offenders during their commitment and after their release. Control during these periods was instead given to the Commissioner of the District of Columbia, who could in turn delegate this authority to the D. C. Department of Corrections, in order to provide continuity of treatment.

[11] In recognition of the difficulty of ascertaining whether, and if so which type of, treatment under the Act would benefit a youth offender, the Act also permits the sentencing court to commit the

eration of these alternatives, but with the decision of the court to employ them, for the Act also preserved the power of trial judges to sentence youth offenders under "any other applicable penalty provision." It is to the question of when a judge may sentence a youth offender outside the Act that we now turn.

## III

### *Sentencing Discretion Under the Act*

### (A)

The language affecting the sentencing role of the judge under the Act is found in § 5010 (d), which tells us:

> "If the court shall find that the youth offender will not derive benefit from treatment under subsection (b) or (c), then the court may sentence the youth offender under any other applicable penalty provision."

Our concern is with the effect of the requirement of a "no benefit" finding on the judge's sentencing discretion.

The legislative history clearly indicates that the Act was meant to enlarge, not restrict, the sentencing options of federal trial courts in order to permit them to sentence youth offenders for rehabilitation of a special sort.

> "The proposed legislation is designed to make available for the *discretionary* use of the Federal judges a system for the sentencing and treatment of [youth offenders] that will promote the rehabilitation of those who *in the opinion of the sentencing judge* show promise of becoming useful citizens . . . ." H. R. Rep. No. 2979, p. 1. (Emphasis added.)

---

offender to one of the above classification agencies where, following observation and study, the Youth Correction Division reports its findings to the court within 60 days. 18 U. S. C. § 5010 (e).

> "The purpose of the proposed legislation is to pro-
> vide a *new alternative sentencing* and treatment pro-
> cedure for [youth offenders]." S. Rep. No. 1180,
> 81st Cong., 1st Sess., 1 (1949) (hereinafter S. Rep.
> No. 1180). (Emphasis added.)

Thus, apart from the discretion vested in administrative
agencies for treatment of those committed under the Act,
as described in Part II, the Act was intended to broaden
the scope of judicial sentencing discretion to include
the alternatives of treatment or probation thereunder.

The Act was a product of studies made by a commit-
tee of federal judges under the auspices of the Judicial
Conference of the United States. The views of the
sponsors as to the effect of the Act on the sentencing dis-
cretion of the trial courts are thus of particular impor-
tance, and they uniformly support the view that the Act
was intended to preserve the unfettered sentencing discre-
tion of federal district judges. Most pertinent is the
statement made by the Chairman of the Judicial Confer-
ence special committee appointed to study punishment
for crime, see n. 8, *supra,* Chief Judge John J. Parker, who
testified before the Subcommittee of the Senate Judiciary
Committee, which conducted the only hearings held on
the bill (S. 2609) enacted as the Federal Youth Correc-
tions Act. Judge Parker stated:

> "[T]he act . . . does not interfere with the power of
> the judge [with respect to sentencing youth offend-
> ers] but gives him merely an alternative method of
> treatment of those people. . . . He may still give
> the youthful offender the punishment prescribed by
> existing statutes, there is nothing in the bill that pre-
> vents that. All that the bill does is to provide that
> if in his judgment and discretion, he thinks that the
> offender before the court is one that can be treated

with advantage under this bill, he can sentence him under this bill instead of under the existing law.

. . . . .

". . . I do not see any possible objection [to the Act]. They say that there are some of these fellows that ought to be given serious punishment notwithstanding their being young and it [the Act] does not prevent their being given serious punishment. Nothing prevents a man from getting 25 years punishment if he deserves it. Nothing prevents his being executed if he deserves such sentence." Hearings on S. 1114 and S. 2609 before a Subcommittee of the Senate Committee on the Judiciary, 81st Cong., 1st Sess., 43–44 (1949) (hereinafter Hearings).

To the same effect is the statement made by Circuit Judge Orie L. Phillips, the Chairman of the Conference subcommittee which gave particular attention to the treatment of youth offenders. See n. 8, *supra.* In response to the statement of Senator Kilgore, sponsor of S. 2609, that the bill "takes nothing" (in terms of sentencing) "away from the court," Judge Phillips replied: "That is correct; it is purely optional." Hearings 69. Earlier Judge Phillips had said of the bill: "That is merely a flexibility and it is not a command that he send the boys up," to which Senator Kilgore replied: "I agree with you on that . . . ." *Id.,* at 67. To the extent other testimony and the debates addressed the question of sentencing discretion under the Act, they invariably reflected the same view,[12] as did the House

---

[12] The only other judges to testify before the Senate Subcommittee were also in accord. District Judge Carroll Hincks, who served on the Conference subcommittee studying treatment of youth offenders, stated:

"I think when the judges say they are opposed to the predecessor of this bill, if you could talk with them, you would find that . . . they

Report, quoted above, and the Department of Justice, which recommended enactment of S. 2609 and noted that the bill "would not deprive the court of any of its present functions as to sentencing." S. Rep. No. 1180, pp. 10–11. The Senate Report's language was identical to that of the Department of Justice.[13] *Id.*, at 1. The legislative his-

would not themselves want to use it. Very well, they do not have to use it." Hearings 57.

District Judge Bolitha J. Laws, who served on the Conference special committee studying general punishment for crime, stated:

"I have already told you that this law is purely an optional situation. A judge who feels that the present system is in all respects perfect and who does not want to use the new provisions, except perhaps rarely, does not have to use them. He still may do one of two things. He may admit the man to probation, or he may send him to an institution exactly as he does now." *Id.*, at 15.

Mr. James V. Bennett, Director, Bureau of Prisons, testified similarly:

"I would like to . . . reemphasize more than Judge Laws has done, that this bill is discretionary . . . . [I]t is very difficult for me to conceive of anybody who could rightfully object to the bill because they can use it or not, as they see fit . . . ." *Id.*, at 25.

During the Senate debate over the bill, Senator Kilgore made clear his position of the matter of sentencing discretion under the bill:

"Its purpose is to grant to trial courts . . . some additional facilities . . . to try certain correctional methods. Use of the system provided by this measure would not be mandatory." 96 Cong. Rec. 8267 (1950).

There was no discussion of sentencing discretion by anyone other than Senator Kilgore in either the Senate or House debates.

[13] The Senate Report also noted that the sentencing judge may sentence a youth offender under applicable provisions other than the Act if, after receiving a pre-sentence diagnosis under 18 U. S. C. § 5010 (e), see n. 11, *supra*, he is convinced the youth is "incorrigible and would derive no help from the program." S. Rep. No. 1180, p. 5. The remark was made in the context of a discussion concerning the need sentencing judges have for additional information about youth offenders they must sentence, and indicated merely that temporary commitment under § 5010 (e) would not deprive the judge

tory of the Act confirms the conclusion that Congress did not intend to alter or circumscribe the sentencing discretion of federal district judges by requiring that any substantive standard be met before the imposition of sentence. There is virtual unanimity of opinion in the legislative history that the Act was intended to increase the sentencing options of federal trial judges, rather than to limit the exercise of their discretion whether to employ the newly created options.

To construe § 5010 (d)'s requirement of a "no benefit" finding to circumscribe that discretion would be incompatible with a clear congressional intent; such a construction would also be at odds with traditional sentencing doctrine. The intent of Congress was in accord with long-established authority in the United States vesting the sentencing function exclusively in the trial court.[14]

"If there is one rule in the federal criminal prac-

---

of the discretion to sentence the youth outside the Act, citing illustratively the prototype of youth offender whom judges would not likely desire to sentence under the Act.

[14] To the extent reference was made to the English Borstal system for treating young offenders in drafting the Act, that reference did not include the English view of the trial court's discretion to make use of that system. Circuit Judge (now Chief Judge) Kaufman of the Court of Appeals for the Second Circuit has stated:

"At present the United States is the only nation in the free world where one judge can determine conclusively, decisively and finally the minimum period of time a defendant must remain in prison, without being subject to any review of his determination." Symposium, Appellate Review of Sentences, 32 F. R. D. 257, 260–261 (1962).

Professor Sanford H. Kadish also notes that in the United States, the "discretion of the judge . . . in [sentencing] matters is virtually free of substantive control or guidance," Kadish, Legal Norm and Discretion in the Police and Sentencing Processes, 75 Harv. L. Rev. 904, 916 (1962). We are unwilling to ascribe to the Congress an intent to import, *sub silentio*, sentencing doctrine contrary to traditional powers of sentencing judges.

tice which is firmly established, it is that the appellate court has no control over a sentence which is within the limits allowed by a statute." *Gurera* v. *United States,* 40 F. 2d 338, 340–341 (CA8 1930).

See *Gore* v. *United States,* 357 U. S. 386 (1958); *Townsend* v. *Burke,* 334 U. S. 736 (1948); *Blockburger* v. *United States,* 284 U. S. 299 (1932).

The statutes referred to in this line of cases established a permissible range within which sentences could be imposed; if a judge imposed a sentence within that range, his exercise of discretion as to where within the permissible range sentence should be fixed was not subject to challenge. The authority to sentence a youth offender under "any other applicable penalty provision" is expressly reserved to federal trial courts by § 5010 (d), and thus is within the permissible range of sentences which may be imposed under the Act. The "no benefit" finding required by the Act is not to be read as a substantive standard which must be satisfied to support a sentence outside the Act, for such a reading would subject the sentence to appellate review even though the sentence was permitted by the Act's terms, thereby limiting the sentencing court's discretion. We will not assume Congress to have intended such a departure from well-established doctrine without a clear expression to disavow it. As our review has shown, the exclusive sentencing power of district judges was acknowledged, and Congress' intention to affirm that power was clearly indicated.

From our conclusion that a finding of "no benefit" was not intended to constitute a substantive standard, it follows that a sentence outside the Act need not be accompanied by a statement of reasons why the court chose such a sentence. The only purpose of such a requirement would be to facilitate appellate supervision of, and thus to

limit, the trial court's sentencing discretion.[15]   In short, we hold that the discretion vested in a district judge under § 5010 (d) is essentially the same as the traditional discretion vested in the court, for example, to impose the minimum sentence on a first offender or a larger sentence on a recidivist. If the failure of a court to sentence a particular youth offender under the Act appears "too harsh, the remedy must be afforded by act of Congress, not by judicial legislation under the guise of construction," *Blockburger, supra,* at 305, since "[w]hatever views may be entertained regarding severity of punishment . . . [t]hese are peculiarly questions of legislative policy." *Gore, supra,* at 393.

(B)

Although the Act was not in any way intended to circumscribe the discretion of sentencing courts, it did provide a new sentencing alternative designed to prevent youthful offenders from continuing their involvement in criminal conduct after the expiration of their sentence. In the novelty of the treatment option made available, and the importance of the objective it was to serve, lies the purpose of § 5010 (d)'s requirement that the court find "no benefit" before imposing a sentence other than one under § 5010 (b) or (c).

---

[15] Judge Marvin E. Frankel (SDNY) has recently stated that while judges are required to explain other rulings, see, *e. g.,* Fed. Rule Civ. Proc. 52 (a), "[t]here is no such requirement in the announcement of a prison sentence." Frankel, Lawlessness in Sentencing, 41 U. Cin. L. Rev. 1, 9 (1972). It would have been a very simple matter for Congress to have included a statement in § 5010 (d) that the sentencing court's determination of no benefit must be supported by reasons, as was required by the proposal regarding adult offenders, before the Congress in 1943, S. 895, Tit. II, § 1, 78th Cong., 1st Sess. See n. 8, *supra.* Congress' failure to so provide in § 5010 (d) strengthens our view that it intended no new appellate encumbrance upon the sentencing process.

Although well-established doctrine bars review of the exercise of sentencing discretion, limited review is available when sentencing discretion is not exercised at all. *Yates* v. *United States,* 356 U. S. 363, 366–367 (1958); *United States* v. *Daniels,* 446 F. 2d 967, 972 (CA6 1971); *United States* v. *Williams,* 407 F. 2d 940, 945 (CA4 1969). See also n. 7, *supra.* The requirement of the "no benefit" finding was designed to insure that the sentencing judge exercised his discretion in choosing not to commit a youth offender to treatment under the Act. Such a finding would make unmistakably clear that the sentencing judge was not only aware of the existence of the new Act, but also knew that the youth offender before him was eligible because of his age for the treatment it provided to accomplish its important purpose.

> "Appellate modification of a statutorily-authorized sentence . . . is an entirely different matter than the careful scrutiny of the *judicial process* by which the particular punishment was determined. Rather than an unjustified incursion into the province of the sentencing judge, this latter responsibility is, on the contrary, a necessary incident of what has always been appropriate appellate review of criminal cases." *United States* v. *Hartford,* 489 F. 2d 652, 654 (CA5 1974). (Emphasis in original.)

Once it is made clear that the sentencing judge has considered the option of treatment under the Act and rejected it, however, no appellate review is warranted.

The question whether the finding of "no benefit" must be explicit or whether it may be implicit in the record of a particular case is answered by the manifest desire of Congress to assure that treatment under the Act be considered by the court as one option whenever the youth offender is eligible for it. If the finding may be implied

from the record, appellate courts must go on to determine what constitutes a sufficient showing of the requisite implication. To hold that a "no benefit" finding is implicit each time a sentence under the Act is not chosen would render § 5010 (d) nugatory; to hold that something more is necessary to support the inference that must be found in the record would create an *ad hoc* rule. Appellate courts should not be subject to the burden of case-by-case examination of the record to make sure that the sentencing judge considered the treatment option made available by the Act. Literal compliance with the Act can be satisfied by any expression that makes clear the sentencing judge considered the alternative of sentencing under the Act and decided that the youth offender would not derive benefit from treatment under the Act.

This case provides an example of the problems arising when the required finding is left to implication. Counsel's references to the Act followed by the District Court's sentence indeed afford support for the argument that, by implication, the options of the Act were considered and rejected. However at the post-conviction hearing the District Court found from the record of the sentencing hearing the implication that the Act was "not applicable." It is thus unclear whether this meant the court believed petitioner to be legally ineligible for treatment under the Act—which would be error—or whether, realizing he was eligible, nevertheless deliberately opted to sentence him as an adult. An explicit finding that petitioner would not have benefited from treatment under the Act would have removed all doubt concerning whether the enlarged discretion Congress provided to sentencing courts was indeed exercised.

Accordingly, the judgment of the Court of Appeals is reversed, and the case is remanded to the end that the

District Court conduct further proceedings consistent with this opinion.

*It is so ordered.*

Mr. Justice Marshall, with whom Mr. Justice Douglas, Mr. Justice Brennan, and Mr. Justice Stewart join, concurring in the judgment.

The Court is today called upon to construe the provision of the Federal Youth Corrections Act, 18 U. S. C. § 5005 *et seq.,* defining the circumstances under which a youth offender may be sentenced as an adult. The Youth Corrections Act (YCA) provides a comprehensive sentencing scheme for offenders between the ages of 18 and 22, affording trial judges four options for sentencing such offenders. The judge may suspend imposition or execution of sentence and place the offender on probation. 18 U. S. C. § 5010 (a). Alternatively, the judge may sentence the offender for treatment and supervision at a special youth facility, to be discharged in no more than 6 years, 18 U. S. C. § 5010 (b), or he may commit the offender to a youth institution for a term which may exceed 6 years, up to the maximum period authorized by law for the offense. 18 U. S. C. § 5010 (c).[1] Finally, the judge may sentence the offender as an adult, pursuant to 18 U. S. C. § 5010 (d), which provides that:

> "If the court shall find that the youth offender will not derive benefit from treatment under subsection (b) or (c), then the court may sentence the youth offender under any other applicable penalty provision."

I agree with the Court's holding that § 5010 (d) requires an explicit finding of "no benefit" as a condition precedent to sentencing an eligible offender as an adult,

---

[1] The actual duration of the treatment period is determined by the Youth Correction authorities. 18 U. S. C. § 5017.

*ante,* at 444, but I find that holding patently inconsistent with the Court's assertion that a sentencing judge need only be aware of the applicability of the Act and choose to reject it in order to satisfy the clear admonition of § 5010 (d). As construed by the Court, the "no benefit" finding is not a finding at all.

I am convinced that the Act was meant to "provide a *preferred* sentencing alternative which must be used in sentencing a youthful offender unless, in the language of § 5010 (d), 'the court shall find that the youth offender *will not derive benefit* from treatment . . .' " under the Act. *Cox* v. *United States,* 473 F. 2d 334, 337 (CA4 1973) (en banc) (emphasis added). And, I fundamentally disagree with the Court's holding that merely by tracking the statutory "no benefit" language a sentencing judge can satisfy the "finding" requirement of § 5010 (d). I would require that the explicit "no benefit" finding be augmented by a statement of the reasons for imposing an adult sentence.

I

I find no basis in either the language or history of the YCA to support the Court's observation that the Act was intended to "preserve unfettered" the discretion of the sentencing judge. *Ante,* at 437. The YCA was the product of more than 10 years of study by various groups and was modeled after the English Borstal system, which had achieved substantial success in rehabilitating young offenders.[2] The initial legislative proposal, an American Law Institute model Act, removed the power to sentence eligible offenders from the trial judges altogether and reposed that power in a correctional authority.[3] Not surprisingly, that proposal

---

[2] H. R. Rep. No. 2979, 81st Cong., 2d Sess., 3–6 (1950).

[3] ALI, Model Youth Correction Authority Act §§ 13 and 30 (Official Draft 1940); *id.,* comment, at 35–36.

brought swift and sharp criticism from the judges whose power was to be sharply curtailed. The next proposal, by the Judicial Conference, involved shared sentencing powers between trial judges and correctional authorities.[4] It met with similar criticism. The 1949 proposal, which was finally enacted into law, retained sentencing power in the trial judge. As the Court today points out, the drafters of the Act repeatedly emphasized that the legislation " 'does not interfere with the [sentencing] power of the judge . . . .' " *Ante,* at 437.

But even the very first Judicial Conference proposal contained a provision specifically requiring the trial judge to make a finding that a youth offender would not benefit from treatment and should not be committed under the Act, before sentencing him under any other penalty provisions.[5] This finding requirement was adapted from the similar Borstal provision which disallows a sentencing court to "impose imprisonment on a person under twenty-one years of age unless . . . no other [Borstal] method of dealing with him is appropriate . . . ."[6] The finding requirement of the Judicial Conference draft was not subject to the same criticism as the provisions which actually removed, rather than limited, the exercise of trial judges' sentencing discretion, and the finding requirement was ultimately enacted into law as § 5010 (d).

The finding requirement is an integral part of the YCA scheme. The stated premise of the Act is that young people between the ages of 18 and 22, especially, are promising subjects for rehabilitation.[7] The purpose of the legislation was, for those offenders,

---

[4] H. R. 2140, Tit. II, § 3, 78th Cong., 1st Sess. (1943).

[5] *Id.,* Tit. III, § 1 (c).

[6] Criminal Justice Act of 1948, § 17 (2), 11 & 12 Geo. 6, c. 58.

[7] H. R. Rep. No. 2979, *supra,* at 1–4.

to "substitute for retributive punishment methods of training and treatment designed to correct and prevent antisocial tendencies. It departs from the mere punitive idea of dealing with criminals and looks primarily to the objective idea of rehabilitation." H. R. Rep. No. 2979, 81st Cong., 2d Sess., 3 (1950).[8] It is clear that from its very inception, the youth corrections program was intended to establish among the goals judges could consider in sentencing eligible offenders, one as paramount— that of rehabilitation.[9] And, in this limited sense, the sentencing discretion of trial judges is necessarily circumscribed in regard to youth offenders. The finding requirement of § 5010 (d) effectuates this policy by permitting eligible offenders to be deprived of the rehabilitative treatment provided under the Act only where they would not benefit therefrom.

The Senate Report accompanying the bill explained the circumstances under which adult sentencing would be proper:

"If . . . the judge is convinced the youth is incorrigible and would derive no help from the program, he may sentence him under any applicable provision of law." S. Rep. No. 1180, 81st Cong., 1st Sess., 5 (1949).

Other aspects of the legislative history underscore Congress' intention that the Act provide a preferred sentencing alternative for eligible offenders. Senator Kilgore, one of the sponsors of the legislation, observed that given the requisite finding "only about 10 percent of [eligible

---

[8] Although the rehabilitative model of corrections has recently been subject to criticism, the fact remains that Congress established a clear preference for the objective of rehabilitation in enacting the YCA.

[9] See, e. g., United States v. Kaylor, 491 F. 2d 1133, 1136 (CA2 1974) (en banc); United States v. Waters, 141 U. S. App. D. C. 289, 293, 437 F. 2d 722, 726 (1970); Carter v. United States, 113 U. S. App. D. C. 123, 125, 306 F. 2d 283, 285 (1962).

offenders would] eventually have to [be] sentence[d as adults], or less." Hearing on S. 895 before a Subcommittee of the Senate Committee on the Judiciary, 78th Cong., 1st Sess., 13 (1943). The House Report concluded that even given the instances in which YCA rehabilitative treatment would fail "more than 70 percent [of eligible youth offenders] can be rehabilitated" under the Act. H. R. Rep. No. 2979, *supra*, at 10. The panoply of treatment options [10] available under the Act is but further evidence that the YCA program was intended to be sufficiently comprehensive to deal with all but the "incorrigible" youth.

This congressional intent finds clear expression in the words of the statute. Section 5010 (d) does not say the sentencing court must merely consider the treatment option provided by the Act; it says in the most uncompromising terms that the court must find the youth "will not benefit" from YCA treatment as a prerequisite to imposing an adult sentence. The use of the words "shall find" emphasizes the mandatory nature of that finding. The specific quality of the finding is underscored by § 5010 (e) which provides for an eligible offender to be temporarily committed for observation and study for the purpose of providing the sentencing court with a report on the particular question defined by § 5010 (d)— whether the youth offender would benefit from treatment under the Act.[11]

---

[10] Emulating the Borstal system, Congress authorized a comprehensive youth corrections system, making a wide range of treatment options available to youth offenders. It mandated that maximum, medium, and minimum security institutions be utilized, 18 U. S. C. § 5011, that long- and short-term treatment be provided, compare 18 U. S. C. § 5010 (b) with 18 U. S. C. § 5010 (c), and that a wide range of treatment services be available. 18 U. S. C. §§ 5011, 5015.

[11] "If the court desires additional information *as to whether a youth offender will derive benefit from treatment* under subsection

Thus, while the Act does not remove a trial judge's responsibility or discretion for the sentencing determination, it does provide a preferred disposition for eligible offenders. A sentencing judge is not required to sentence a youth offender under the Act; the judge can still exercise his "sound discretion to deny such rehabilitative treatment to those youths in the exceptional cases where the judge determines that the special youth treatment afforded by the Act would be of no value." *United States* v. *Waters,* 141 U. S. App. D. C. 289, 291, 437 F. 2d 722, 724 (1970). The legislative history relied on by the Court merely emphasizes this point—that the Act was intended to be another sentencing alternative available to the trial judge and that the decision as to whether it should be employed in a particular case remains a decision committed to his discretion. That history is not, however, inconsistent with what seems to me the plain meaning of the words of the statute— that the sentencing judge's discretion is circumscribed by the affirmative finding requirement of § 5010 (d).[12] The YCA "provides a preferred sentencing alternative" which must be used in sentencing a youth unless the facts of the individual case meet the statutory requirement—

_____

(b) or (c) it may order that he be committed to the custody of the Attorney General for observation and study at an appropriate classification center or agency. Within sixty days from the date of the order, or such additional period as the court may grant, the Division shall report to the court its findings." 18 U. S. C. § 5010 (e) (emphasis added).

[12] An unsuccessful effort to remove these bonds on the discretion of sentencing judges was made in 1972, when a bill was introduced to amend 18 U. S. C. § 5010 (d) to provide that:

"Nothing in this chapter shall be construed to preclude the court, in any case, from sentencing a youth offender under any other applicable penalty provision." S. 3290, 92d Cong., 2d Sess. (1972); see 118 Cong. Rec. 6776–6788 (1972).

The proposed amendment was not enacted.

unless, in the language of § 5010 (d), the court finds that the youth offender will not derive benefit from treatment under the Act.[13]  *Cox* v. *United States,* 473 F. 2d, at 337; *United States* v. *Waters,* 141 U. S. App. D. C., at 292–293, 437 F. 2d, at 725–726.  Every Court of Appeals which has considered the issue, except the court below, has agreed that the manner in which the sentencing judge exercises his discretion is thus limited.  *Brooks* v. *United States,* 497 F. 2d 1059 (CA6 1974); *United States* v. *Kaylor,* 491 F. 2d 1133 (CA2 1974) (en banc); *United States* v. *Schenker,* 486 F. 2d 318 (CA5 1973); *United States* v. *Coefield,* 155 U. S. App. D. C. 205, 476 F. 2d 1152 (1973) (en banc); *Cox* v. *United States, supra; Williams* v. *United States,* 476 F. 2d 970 (CA3 1973); see *United States* v. *MacDonald,* 455 F. 2d 1259, 1265 (CA1 1972); [14] cf. *Small* v. *United States,* 304 A. 2d 641 (DC Ct. App. 1973).

In a sense, the Court today also recognizes the inherent limitation on the judge's discretion imposed by § 5010 (d) by requiring an explicit "no benefit" finding as a prerequisite to adult sentencing.  As conceived by the Court, however, the required "no benefit" finding is no finding at all, but merely a ritualistic invocation of the statutory language.  In explaining why the "no benefit" finding

---

[13] The requirement of a positive finding of "no benefit" to support an adult sentence under § 5010 (d) is merely the obverse of the requirement of 18 U. S. C. § 4209 that as a prerequisite to young adult offender sentencing the sentencing "court finds that there is reasonable grounds to believe that the defendant will benefit from [such] treatment . . . ."  See *United States* v. *Kaylor,* 491 F. 2d, at 1137.

[14] Subsequently in *United States* v. *Walker,* 469 F. 2d 1377 (1972), the Court of Appeals for the First Circuit agreed that the Act precluded adult sentencing where the offender would derive benefit from treatment under the Act, but found it clear from the nature of the offenses involved that the defendant had no antisocial tendencies to be corrected, hence no benefit to be derived from YCA treatment. *Id.,* at 1381 n. 4.

must be explicit, the Court notes that "[t]o hold that a 'no benefit' finding is implicit each time a sentence under the Act is not chosen would render § 5010 (d) nugatory." *Ante,* at 444. Despite these protestations, the Court today renders the finding requirement of § 5010 (d) a nullity. By holding that the Act was intended to preserve "the unfettered sentencing discretion of federal district judges," *ante,* at 437, and that sentencing judges need only have "considered the option of treatment under the Act and rejected it," *ante,* at 443, the Court effectively reads the unambiguous mandate of a "no benefit" finding out of the Act. A mere parroting of the statutory language is hardly an affirmative finding. The Court's opinion seems to indicate that the sentencing judge need not mean what he says when he pronounces the "no benefit" litany. Although the Court requires him to go through the charade of saying that the offender would not benefit from treatment under the Act, it apparently does not require that the judge actually find no benefit but only that he be aware of the Act and reject it. I think it remarkable that this Court should approve such an empty and duplicitous ritual.

## II

If the Court were to hold that the Act limited a trial judge's discretion by requiring that he actually find a youth offender would not benefit from YCA treatment before sentencing him as an adult, I would think that more than a mere recitation of the conclusory finding of "no benefit" should be required. To say that simply invoking the words of the statute satisfies the mandate of § 5010 (d) affords far too little credence both to Congress' deep concern for the rehabilitative potential of young offenders and to its obvious intention that eligible offenders be sentenced under the Act if they would benefit from its rehabilitative programs. To give effect to these concerns, I would require that the trial judge include, on the

record, a statement which makes clear that he considered the provisions of the Act, weighed the treatment option available, and decided in light of his familiarity with the offender that he would not derive benefit from treatment under the Act.[15]

The mere recitation of the "no benefit" litany can hardly bear the weight of demonstrating such compliance. By taking the unusual step of requiring a specific finding in this limited but highly important area of sentencing, Congress mandated a reasoned determination that the offender would not benefit from the rehabilitative treatment available under the Act.  Accordingly, in my view, a statement of the factors which informed and shaped the sentencing decision must accompany the conclusory finding of "no benefit" if that congressional purpose is to be served.

The Borstal system, which provided the model for the youth corrections scheme in general and the requirement of § 5010 (d) in particular, envisions a trial judge stating his reasons for sentencing an eligible offender as an adult.[16]  Similarly, most of the Courts of Appeals which

---

[15] See *Brooks* v. *United States,* 497 F. 2d 1059, 1062–1063 (CA6 1974); *United States* v. *Kaylor,* 491 F. 2d, at 1139; *United States* v. *Coefield,* 155 U. S. App. D. C. 205, 210–211, 476 F. 2d 1152, 1157–1158 (1973) (en banc).

[16] Criminal Justice Act of 1948, § 17 (3), 11 & 12 Geo. 6, c. 58. The Court asserts, *ante,* at 440 n. 14, that the reference to the English Borstal system made in drafting the Act "did not include the English view of the trial court's discretion to make use of that system."  To support this claim, the Court relies on two general descriptions of American sentencing procedures made a decade after enactment of the legislation.  Those comments were not directed to the administration of the YCA, hence their validity as indicia of congessional intent in this limited context is questionable at best.

On the other hand, there is considerable evidence that the Borstal system did, in fact, provide a model on the question of the trial court's sentencing discretion, not the least of which is the marked

have faced the issue have required a statement of reasons as a necessary concomitant of the § 5010 (d) finding. A unanimous en banc decision of the Court of Appeals for the Second Circuit and a near-unanimous en banc decision of the Court of Appeals for the District of Columbia Circuit [17] have found a statement of reasons supporting the "no benefit" finding to be " 'essential to a knowledgeable administration of the Act . . . .' " *United States* v. *Kaylor,* 491 F. 2d, at 1139; *United States* v. *Coefield,* 155 U. S. App. D. C., at 210, 476 F. 2d, at 1157. The Court of Appeals for the Sixth Circuit has, more recently, held that a statement of reasons accompanying adult sentencing is "necessary to insure that the sentencing court . . . has deliberately considered whether a youth offender may benefit from the treatment provided for in the Act . . . ." *Brooks* v. *United States,* 497 F. 2d, at 1063. Similarly, the Court of Appeals for the Fourth Circuit recently remanded a case for consideration of whether treatment under the Act would be beneficial to the offender and specifically ordered the trial judge to state the reasons for his conclusion. *Cox* v. *United States,* 473 F. 2d, at 337. In fact, the court below is the only Court of Appeals to specifically disavow a requirement of reasons for a § 5010 (d) sentence.[18]

---

similarity between 18 U. S. C. § 5010 (d) and the Criminal Justice Act of 1948, § 17 (2), 11 & 12 Geo. 6, c. 58, both of which require a no-benefit finding as a prerequisite to adult sentencing.

[17] Only Judge MacKinnon, of the 10 participating judges on the Court of Appeals for the District of Columbia Circuit, dissented from that court's en banc decision in *Coefield, supra.*

[18] The First Circuit in *United States* v. *MacDonald,* 455 F. 2d 1259, 1265 (1972), remanded a case to the District Court "to make the findings required by the Federal Youth Corrections Act," leaving unclear whether those findings encompassed a statement of reasons. The Third Circuit specifically reserved the issue in *Williams* v. *United States,* 476 F. 2d 970 (1973). The Fifth Circuit, in its only case on the issue, remanded for appropriate findings under

Contrary to the Court's assertion that appellate review is the only purpose to be served by a statement of reasons, that requirement serves a number of other important policies. First, it might well contribute to rationalizing the sentencing process and to decreasing disparities in sentences. Articulating reasons should assist a trial judge in developing for himself a consistent set of principles on which to base his sentencing decisions. Requiring "[s]uch a procedure would encourage the judge to clarify and justify, in his own mind, the grounds for the sentence he chooses. As a result, sentencing decisions would tend, on the whole, to be more carefully thought out." *United States* v. *Velazquez,* 482 F. 2d 139, 142 (CA2 1973); accord, *United States* v. *Brown,* 479 F. 2d 1170, 1172 (CA2 1973).

The reasons may also be of use to correctional authorities in their handling of the prisoner after sentence. The kind of correctional and rehabilitative treatment an offender receives should take into account the reasons for his sentence.

A disclosure of reasons may also aid the defendant's counsel to insure that the sentence is not premised on misinformation or inaccuracies in the material upon which the sentencing judge relies. "A Sphinx-like silence on the court's part precludes anyone (including the parties, [and] the judge . . .) from learning whether he acted in error." *Id.,* at 1173; cf. *United States* v. *Tucker,* 404 U. S. 443 (1972).

---

§ 5010 (d) without explanation as to whether an ultimate finding of no benefit was alone sufficient. *United States* v. *Schenker,* 486 F. 2d 318 (1973). A case specifically dealing with the reasons requirement, *Hoyt* v. *United States,* No. 73–2435, is presently pending before the Fifth Circuit. The Ninth Circuit called for an express no-benefit finding but has not faced the question of whether reasons are required in support thereof. *United States* v. *Jarratt,* 471 F. 2d 226 (1972).

Moreover, an articulation of reasons may actually contribute to the offender's rehabilitation by avoiding any feeling that his sentence was arbitrary.[19]   As MR. JUSTICE (then Judge) STEWART observed:

> "Justice is measured in many ways, but to a convicted criminal its surest measure lies in the fairness of the sentence he receives. . . .  It is an anomaly that a judicial system which has developed so scrupulous a concern for the protection of a criminal defendant throughout every other stage of the proceedings against him should have so neglected this important dimension of fundamental justice." *Shepard* v. *United States*, 257 F. 2d 293, 294 (CA6 1958).

If reasons were articulated for the sentencing decision, an offender would be less apt to perceive his fate as being arbitrarily determined.[20]   Reasoned decisions may even enhance the legitimacy of the sentencing process as perceived by the general public for, as noted by the Report of the American Bar Association Project on Standards for Criminal Justice:

> "It is hardly commanding of public respect for our system on the one hand to increase the alternatives of the sentencing judge so that he can shape his sentence to fit each case, and on the other hand to

---

[19] A leading federal district judge has observed that "[t]he absence of any explanation or purported justification for the sentence is among the more familiar and understandable sources of bitterness among people in prison." M. Frankel, Criminal Sentences, Law Without Order 42–43 (1972).

[20] There may, of course, be circumstances in which it would not be advisable to state the reasons underlying imposition of a particular sentence in the presence of the defendant, in which case those reasons could instead be committed to writing and made part of the record.

take the position that he need not explain why he selects a particular sentence . . . ." [21]

Although these considerations apply to sentencing decisions generally,[22] I do not mean to suggest that reasons are required in any other sentencing context. Contrary to the majority's accusations, my view of the Act does not require wholesale abandonment of "traditional sentencing doctrine." *Ante,* at 440. We are concerned here with only a limited, albeit important, area of sentencing for which Congress has established special rules. Congress' urgent concern for the rehabilitative potential of young offenders and the specific-finding requirement of § 5010 (d) make the need for reasons particularly compelling in this context. Requiring a statement of reasons would encourage trial judges to direct their attention to the crucial questions of benefit and treatment, to take a hard look at the relevant factors, and to focus on value judgments inherent in their sentencing decision. See *United States* v. *Phillips,* 156 U. S. App. D. C. 217, 479

---

[21] American Bar Association Project on Standards for Criminal Justice, Appellate Review of Sentences 2–3 (Approved Draft 1968).

[22] For a general discussion of the value of a statement of the reasons underlying the imposition of sentence, see *United States* v. *Phillips,* 156 U. S. App. D. C. 217, 479 F. 2d 1200 (1973); *United States* v. *Velazquez,* 482 F. 2d 139, 142 (CA2 1973); *United States* v. *Brown,* 479 F. 2d 1170, 1172 (CA2 1973); American Bar Association Project on Standards for Criminal Justice, Sentencing Alternatives and Procedures § 5.6 (ii) and commentary (b), pp. 270–271 (Approved Draft 1968); *id.,* Appellate Review of Sentences § 2.3 (c) and commentary (e), pp. 45–47 (Approved Draft 1968); M. Frankel, Criminal Sentences, Law Without Order 39–49 (1972); R. Goldfarb & L. Singer, After Conviction 191–195 (1973); Wyzanski, A Trial Judge's Freedom and Responsibility, 65 Harv. L. Rev. 1281, 1292–1293 (1952); Youngdahl, Remarks Opening the Sentencing Institute Program, 35 F. R. D. 387, 388 (1964); cf. *North Carolina* v. *Pearce,* 395 U. S. 711, 726 (1969); *Kent* v. *United States,* 383 U. S. 541, 561 (1966).

F. 2d 1200 (1973). It is clearly consonant with the Act to require such reasoned consideration. I must agree with the perceptive observations of Senior Judge Fahy of the District of Columbia Circuit that requiring a statement of reasons is essential to assure:

> "firstly, that the District Judge manifest not only an awareness that the Act is applicable to the case, but also an accurate understanding of the scope of his discretion under the Act; secondly, that the District Judge has been informed of the pertinent facts relating to the individual defendant before him, either by evidence coming to his attention in the trial, by a presentence report, or by a recommendation and report made under section 5010 (e); and thirdly, that the District Judge, by his statement of reasons where required, has given consideration and related the facts of the individual case to the applicable law." *United States* v. *Coefield,* 155 U. S. App. D. C., at 210–211, 476 F. 2d, at 1157–1158 (footnote omitted).

Section 5010 (e) of the Act provides a mechanism for the trial judge to secure the expert assistance of correctional authorities in determining whether an eligible offender would benefit from treatment. I agree with the two Courts of Appeals which have passed on the issue that:

> "[W]hen a judge has availed himself of the assistance afforded by § 5010 (e), that is to say, where he has ordered the youth offender committed . . . for observation and study . . . and the Division has made its report to the court, and after considering the report has followed its findings or recommendation in imposing sentence, additional reasons are not required to be stated, although, of course, the

judge is not prevented from stating his own reasons." *United States* v. *Kaylor,* 491 F. 2d, at 1139.
Accord, *United States* v. *Coefield,* 155 U. S. App. D. C., at 210, 476 F. 2d, at 1157. But the Act clearly intended that the ultimate sentencing decision remain with the trial judge. That decision should not pass by abdication to the correctional authorities who prepare the § 5010 (e) study. Thus, where a trial judge secures a § 5010 (e) report, he should adopt its reasons as his own only after assuring himself of the adequacy of the report and propriety of its recommendation.[23]

I see no reason to reach here the issue of appellate review of the District Court's imposition of an adult sentence. I believe that the Youth Corrections Act provides a preferred-sentencing alternative which can only be abandoned on the basis of a finding that an eligible offender will not benefit from treatment under the Act. The District Court imposed sentence on the assumption that the YCA was not a preferred disposition and no finding was required. The Court today finds the District Court's sentence invalid only for failure to make the required "no benefit" finding. Under either the Court's view or my own, the appellate-review question is clearly not yet presented by this case.[24]

Accordingly, I concur in the judgment of the Court insofar as it reverses and remands because the District Court failed to make the requisite "no benefit" finding. I disagree, however, with the opinion of the Court inso-

---

[23] See, *e. g., United States* v. *Norcome,* 375 F. Supp. 270 (DC 1974); *United States* v. *Tillman,* 374 F. Supp. 215 (DC 1974).

[24] Respondent agrees that should this Court determine that the YCA provides a preferred-sentencing alternative for eligible offenders, then the Court need not reach in this case the issue of appellate review since the District Court never considered itself bound by such a standard. Brief for United States 40–41.

far as it suggests that a merely conclusory statement of "no benefit" satisfies the statutory requirement and insofar as it purports to pass, albeit in dicta, on the question of appellate review of a § 5010 (d) adult sentence, an issue not before this Court.