889 F.2d 1100
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Peter W. ENGLAND, Petitioner,
v.
DEPARTMENT OF the TREASURY, Respondent.
 No. 89-3165.
 United States Court of Appeals, Federal Circuit.
 Oct. 19, 1989.
 
 Before BISSELL, Circuit Judge, COWEN, Senior Circuit Judge, and MICHEL, Circuit Judge.
 MICHEL, Circuit Judge.
 
 DECISION
 
 1
 The decision of the Merit Systems Protection Board (Board), Docket No. DC07528810380, which became final December 28, 1988, upholding the Department of the Treasury's suspension of petitioner for thirty days is affirmed.
 
 OPINION
 
 2
 Petitioner was suspended for violating the Department of the Treasury's Minimum Standards of Conduct sections 0.735-30, 0.735-33, and 0.735-40. Our standard of review of a Board decision is clear: We need only decide if the decision is unsupported by substantial evidence, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. See 5 U.S.C. Sec. 7703(c) (1988); Hayes v. Department of Navy, 727 F.2d 1535, 1537 (Fed.Cir.1984).
 
 
 3
 Addressing only the first basis for the petitioner's suspension, violation of Minimum Standards of Conduct section 0.735-30, we must uphold the Board's decision. Petitioner did not explicitly limit his appeal to sections 0.735-33 and 0.735-40, but made general arguments that his right to equal protection and his first amendment rights as a public employee were violated by his suspension.* We therefore must address the section 0.735-30 violation as challenged on constitutional grounds.
 
 
 4
 Section 0.735-30 provides: "An employee shall avoid any action, ... which might result in, or create the appearance of ... [a]ffecting adversely the confidence of the public in the integrity of the Government." Petitioner asserted that his acts that violated section 0.735-30 were constitutionally protected conversations petitioner had on government phones. His attempt to limit the evidentiary basis of the section 0.735-30 violation to phone conversations, however, is not supported by the Board's opinion and fails to address the Board's finding that petitioner granted authority to an agent to solicit embassies protected by the Secret Service.
 
 
 5
 The Board found that petitioner authorized solicitations for the benefit of the Uniformed Division Officers Association (UDOA); that the person petitioner authorized made solicitations "as UDOA's agent"; and that petitioner "did assist in the solicitation of ads or donations upon referral from [the agent]." England v. Department of Treasury, Docket No. DC07528810380, slip op. at 5 (MSPB Aug. 23, 1988). Further, the agent requested funds from "entities for which the agency provided protection and one business which was seeking further contracts with the agency." Id. at 12.
 
 
 6
 The Board found that embassies felt pressured to buy ads and viewed the solicitor as very persistent "such that he 'would not take no for an answer.' " Id. at 8. The Board also found that such solicitation "may affect adversely the confidence of the public in the integrity of the Government." Id. at 7.
 
 
 7
 The Board heard testimony that foreign embassies were requested to increase their contribution amounts, making embassy personnel feel harassed. Testimony was heard that one embassy violated the laws of its home country by making such a payment and that another embassy made a payment even though it believed it could not afford to do so. There is, therefore, substantial evidence for the Board's conclusion that soliciting funds from foreign embassies and from a business seeking to contract with the agency might result in, or create the appearance of, adversely affecting the public's confidence in the integrity of the government.
 
 
 8
 Petitioner contends, however, that his first amendment rights and his right to equal protection were violated by virtue of his suspension.
 
 A. FIRST AMENDMENT
 
 9
 To establish a first amendment violation, petitioner first must show that the action for which he was disciplined was speech protected by the first amendment. See Connick v. Myers, 461 U.S. 138, 147, 154 (1983) (upholding dismissal of Assistant District Attorney for circulation of questionnaire within her office); Fiorillo v. United States Dep't of Justice, 795 F.2d 1544, 1550-51 (Fed.Cir.1986). The court must then balance " 'the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public service it performs through its employees.' " Connick, 461 U.S. at 142 (citing Pickering v. Board of Education, 391 U.S. 563, 568 (1968)).
 
 
 10
 Petitioner relies on the case of Schaumburg v. Citizens for a Better Environ., 444 U.S. 620 (1980), to argue that the act of fund solicitation is protected because it promotes the speech embodied in the newspaper. Because petitioner's conversations with the agent and callers essentially concerned fund raising, not discussions of public issues, it would seem not to be protected speech. Even assuming, but not deciding, that petitioner's actions (hiring an agent, giving him authority to solicit advertising for a newspaper, and aiding the solicitation via phone conversations) constitute protected speech on matters of public concern under Schaumburg, the court's task is to balance petitioner's interest in soliciting funds for the union newspaper against the government's interest embodied in section 0.735-30.
 
 
 11
 The governmental interest of maintaining public confidence in the government's integrity carries great weight and rests at the heart of credible governance. Section 0.735-30 seeks to prohibit just those acts which negatively affect, or appear to negatively affect, public confidence in the government's integrity. In this instance the very harm this section seeks to guard against occurred. That foreign embassies protected by the UDOA were solicited for funds raises serious questions about the integrity of the organization which guards the embassies.
 
 
 12
 Section 0.735-30, both on its face and as applied here, must narrowly "serve [legitimate] interests without unnecessarily interfering with First Amendment freedoms." Schaumburg, 444 U.S. at 637; see NAACP v. Button, 371 U.S. 415, 438 (1963) ("Broad prophylactic rules in the area of free expression are suspect. [citations omitted]. Precision of regulation must be the touchstone...."). Section 0.735-30 is narrowly tailored to promote the government's interest: It neither prohibits the publication of the newspaper nor bars all solicitation. This section only proscribes behavior, such as the Board found, that jeopardizes the government's integrity. The governmental interest, we conclude, is paramount to petitioner's right to solicit funds in this manner. Accordingly, we affirm the Board's decision rejecting petitioner's first amendment contention as in keeping with the Supreme Court's teaching in Connick.
 
 B. EQUAL PROTECTION
 
 13
 Petitioner contends he was denied equal protection guaranteed by the fifth amendment because another organization, the Police Association, had a newspaper with commercial advertisements and no member of the Police Association had been disciplined for violating Treasury regulations, even though a member may have solicited embassies sometime in the past.
 
 
 14
 Petitioner has shown neither that he, as a member of UDOA, is similarly situated compared to a member of the Police Association nor that he has received disparate treatment for the same acts. England, slip op. at 13-14. Assuming that members of the two groups could be subject to the Treasury's Minimum Standards of Conduct, the Board found as a fact that petitioner's knowledge of the Police Association procedures "is at least nine years old" and is not a reliable basis for determining similarities between the groups, because testimony was taken about the Police Association's current publication procedures and that testimony conflicted with petitioner's recollection. Id. at 13. We cannot say that the Board's finding lacks the support of substantial evidence and therefore we must uphold the decision that petitioner has not demonstrated that he was denied equal protection.
 
 C. PENALTY
 
 15
 The Board's conclusion that petitioner violated other Minimum Standards of Conduct need not be addressed, as the violation of section 0.735-30 alone supports the penalty imposed, although the Board did not differentiate among the three violations but treated them, en bloc, as justifying the suspension. Similarly, the deciding official, without distinguishing among the three violations, imposed a 30-day suspension without pay, because "it was felt that the [petitioner's] actions soliciting embassies for donations ... had impugned, or had the potential to impugn, the agency's reputation." Id. at 16. Thus, the deciding official focused on the operative facts presented rather than justifying the penalty for a specific violation. Under any analysis of a reasonable penalty for violation of section 0.735.30, we cannot say that a 30-day suspension for engaging in activities which may impugn the government's integrity amounts to an abuse of discretion. On the contrary, the penalty is reasonable in light of the agency's great interest in protecting public confidence in the integrity of the government.
 
 
 16
 The decision of the Board is affirmed.
 
 
 17
 BISSELL, Circuit Judge, concurring in the result.
 
 
 18
 I would affirm because England only challenges the section 0.735-30 charge as unsupported by substantial evidence. England's telephone conversations, in and of themselves, constitute a sufficient basis for this charge and warrant the penalty imposed.
 
 
 
 *
 See Petitioner's Opening Brief at 2. We read petitioner's statement of "Issues Presented" as raising equal protection and public employee first amendment questions as to all grounds for his suspension, including section 0.735-30, because he does not limit those contentions to any particular violation and they fit the facts of all three. Petitioner explicitly addressed the constitutionality of the section 0.735-30 violation only in his reply brief. Had he not implicitly made a constitutional claim as to section 0.735-30 in his opening brief, he would have waived his right to contest his section 0.735-30 violation. Cf. Dorszynski v. United States, 418 U.S. 424, 431-32 n. 7 (1974); In Re Kaufmann, 451 F.2d 1096, 1098 n. 4, 172 USPQ 124, 125 n. 4 (CCPA 1971) (refusing to consider an issue raised at oral argument, not raised below, not listed in reasons for appeal, nor discussed in appellant's brief)